HOLLINGSWORTH *et al. vs.* THE CITY OF ATLANTA.

To convict a person in a police court for keeping spirituous and malt liquors for unlawful sale, there ought to be such evidence of the spirit or malt element in the liquors, and such evidence that they were kept for sale, as would warrant a jury in finding the accused guilty, after giving him the benefit of the legal doctrine of reasonable doubt.

October 5, 1887.

Evidence. Liquor. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. March Term, 1887.

The evidence set out in the petition for *certiorari* was, in brief, as follows: A city detective saw one Brown, a soldier, take a bottle from one of defendants and give

what he supposed to be money to the defendant. He asked Brown if he did not get a bottle from the store. Brown replied yes, and handed the bottle to the detective, who tasted of its contents. It tasted like corn whiskey, but the detective did not swallow any of it. Soon afterwards, the detective saw one of defendants give a colored man a bottle. He tasted of it and found it contained corn whiskey. Another witness, a policeman, testified that one of the bottles contained corn whiskey. Brown testified that the bottle he got did not contain liquor; that the fluid was not intoxicating; and that it was of a color between water and rye liquor.

The defendants testified in behalf of each other that they did not keep or have liquor of any kind, and sold none; that one of them sold the colored man a bottle of soda water; and that they had a drink called orange juice colored like lemonade. A waiter in the wine-room of defendants testified that the colored man came in and asked for something to drink; that one of defendants said they had not what he wanted, to which he replied, "I don't want liquor; I've got a bottle in my pocket now," and pulled it out, and then replaced it in his side pocket. This witness was corroborated as to these facts by the colored man, who further testified that he brought the whiskey from a picnic; that he did not tell the detective that he bought it at defendants' place; and that what he bought at the time in question was soda water. The waiter testified that when once he drank " orange juice," it made him sick, but not drunk.

R. J. JORDAN, for plaintiffs in error.

J. B. GOODWIN; J. T. PENLDETON, for defendant.

BLECKLEY, Chief Justice.

These applicants for *certiorari* were tried before the city recorder of Atlanta, found guilty and sentenced to pay a

fine of $250 each, or serve thirty days in the manual labor department of the city. The charge was the keeping of spirituous and malt liquors for unlawful sale. The petition sets out what purports to be the evidence. The judge of the superior court refused to sanction the petition and to order the writ of *certiorari* to issue, and that is the error complained of.

We have looked into the case carefully, and have come to the conclusion that the *certiorari* ought to be granted. Taking the facts as set out in the petition (and we have to consider them as true), we think that there is such reasonable doubt of guilt as entitled these parties to an acquittal, according to the humane principles of criminal law. The evidence tending to criminate was all reconcilable with the hypothesis of innocence. It was not shown that any liquor was kept which was not disposed of. The evidence takes after two bottles as disposed of, one in the possession of a soldier, and the other in the possession of a negro; and if the testimony is true (and it seems not to have been impeached), the soldier's bottle, in all probability, did not contain spirituous or malt liquors, and the negro's bottle, in all probability, was not procured at that establishment, but somewhere else, carried there by him and then taken away. If there had been evidence showing the presence of other spirituous or malt liquor in the establishment, that might have been looked to as a kind of *corpus delicti*, and these bottles passing out might have been regarded as illustrating the purpose and intent of having it there. But there is not a syllable of evidence that there was any liquor on the premises except those two packages, and as to one of them it is too doubtful whether it contained spirituous or malt liquor. It was tasted by an excellent judge of the article, one of the policemen, and he testified that it tasted something like whiskey. When it came to the negro's bottle, this same policeman had no doubt; he swore that that bottle contained whiskey, that he knew it was whiskey, and went

on to add that he could tell whiskey, that is, could distinguish whiskey from what was not whiskey; but he did not do it in the case of the soldier's bottle. Another policeman stated that he tasted from the soldier's bottle, and that it tasted like whiskey, but he did not say when, or where, or on what occasion he made the experiment.

The soldier testified, as the evidence is represented in this record, that it was not liquor, that he bought it as orange juice, and that it was not intoxicating. There was no evidence in the case at all to show what orange juice is composed of. From the name, we would infer that it is an extract, from the fruit of the orange; but the name may be misleading; it may be what is sometimes termed a fancy name, and the article may have malt or spirits in it; but there was no evidence either by the prosecution or the defence on that subject; and of course the prosecution must make out the case. If there is any reasonable doubt as to what orange juice is, the accused are entitled to the benefit of it. If a bottle contains whiskey, and a soldier and two policemen taste of it, surely one or more of them ought to be able to testify to its being whiskey, or spirituous liquors of some sort.

The negro accounts fully for the presence of his bottle and its contents, and in this he was corroborated by the clerk of the accused, and neither of them was impeached.

It is essential to all fair trial that the benefit of reasonable doubt should be given to the accused, for until doubt is removed, the presumption of innocence is not overcome. It will not do to raise fanciful doubts; the evidence should not be strained to acquit or convict; it should be fairly construed, and when so construed, if it is too weak to convict, the party ought to be acquitted, no matter what the consequences may be. The old maxim, "Let justice be done, though the heavens fall," ought to be regarded by police courts and all other courts. With proof strong enough to convict, conviction ought to take place and be upheld. This is an exceedingly doubtful conviction, and we think

he city ought to be heard from through its recorder, so as to get the real facts. It is probable that the evidence may appear on the return stronger than it is represented here; but we cannot now consider what the evidence really was, but simply what it is represented in this petition to have been; and we accordingly reverse the judgment, ruling as follows:

To convict a person in a police court for keeping spirituous and malt liquors for unlawful sale, there ought to be such evidence of the spirit or malt element in the liquors, and such evidence that they were kept for sale, as would warrant a jury in finding the accused guilty, after giving him the benefit of the legal doctrine of reasonable doubt.

Judgment reversed.